Michelle R. Press, SBN 163637
Sue Kim, SBN 310334
**WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:(213) 443-5100
Facsimile: (213) 443-5101

Attorneys for Plaintiff
STATE NATIONAL INSURANCE CO., INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

STATE NATIONAL INSURANCE CO., INC.,

                                    Plaintiff,

v.

R&E MANAGEMENT GROUP, INC.; KDM (VICTORY) LLC aka KDM LLC; MAYER PP ASSOCIATES, LLC; MARIA ANGELA ALBERTO, an individual; MARIA JOANA ALBERTO, an individual; VENUSTIANO APARICIO, an individual; OLIVIA ATAGON, an individual; NATALIE BELTRAN, an individual; DENISSE BENITEZ, an individual; MAYRA LORENA BORJAS, an individual; MARIA CORCIO, an individual; ELVIRA CUERVO, an individual; RASHARD WILLIAM CUNNINGHAM, an individual; ALBA LIDIA FONSECA, an individual; ISIDRO TEBALAN GARCIA, an individual; IRMA GODINEZ, an individual; ISABEL GODOY, an individual; ALBERTO HERNANDEZ, an individual; MARCOS HERNANDEZ, an individual; MARIA E. LAS GARCIA, an individual; CLAUDIA MAZARIEGOS, an individual; MARIA LEONOR MENJIVAR, an individual; BALTAZAR REYES MENJIVAR, an individual; ARTURO OSORIO, an individual; MARIA GARCIA PAREDES, an individual; ADELINA RAMIREZ, an individual; MARCO

Case No:

**COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION**

1

COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION

271787112v.1

TULIO RAMIREZ, an individual; )
NICHOLAS RODRIGUEZ, an )
individual; JUANA SILVERIO, an )
individual; MOLLIE TUGGLE, an )
individual; ZUBAIDAH WAGJID, an )
individual  and DOES 1 through 20, )
)
              Defendants. )
)
)
_____ )

Plaintiff State National Insurance Company, Inc. ("Plaintiff") hereby brings this complaint against defendants R&E Management Group, Inc., KDM (Victory) LLC aka KDM, LLC, and Mayer PP Associates, LLC (collectively "Insured Defendants"). Plaintiff alleges as follows:

## INTRODUCTION

1.    Plaintiff is affording a defense to the Insured Defendants in an underlying action entitled *Alberto, et al v. R&E Management Group, Inc., et al.,* Los Angeles Superior Court Case No. 20STCV44357 ("the underlying action"). (Attached as **Exhibit 1** is a true and correct copy of the complaint filed in the underlying action.) Plaintiff seeks a declaration that it has no duty to indemnify Insured Defendants in the underlying action pursuant to insurance policies Plaintiff issued. Plaintiff also seeks reimbursement of defense fees and costs it expended on behalf of Insured Defendants to defend against non-covered claims.

## THE PARTIES

2.    Plaintiff is now and was at all relevant times a corporation formed under the laws of the State of Texas with its principal place of business in Bedford, Texas. At all times mentioned in this complaint, Plaintiff has been authorized to do business in the State of California.

3.    Plaintiff is informed and believes, and thereon alleges that defendant R&E Management Group, Inc. ("R&E"), is an organization organized under the laws of the State of California with its principal place of business in Los Angeles, CA.

2

4.      Defendant KDM (Victory) LLC aka KDM LLC ("KDM") is a limited liability company organized under the laws of the State of California with its principal place of business in Los Angeles, California.

5.      Defendant Mayer PP Associates, LLC ("Mayer PP") is a limited liability company organized under the laws of the State of California with its principal place of business in Los Angeles, California.

6.      Defendant Maria Angela Alberto is a citizen and resident of the State of California.

7.      Defendant Maria Joanna Alberto is a citizen and resident of the State of California.

8.      Defendant Venustiano Aparicio is a citizen and resident of the State of California.

9.      Defendant Olivia Atagon is a citizen and resident of the State of California.

10.     Defendant Natalie Beltran is a citizen and resident of the State of California.

11.     Defendant Denisse Benitez is a citizen and resident of the State of California.

12.     Defendant Mayra Lorena Borjas is a citizen and resident of the State of California.

13.     Defendant Maria Corcio is a citizen and resident of the State of California.

14.     Defendant Elvira Cuervo is a citizen and resident of the State of California.

15.     Defendant Rashard William Cunningham is a citizen and resident of the State of California.

16.     Defendant Alba Lidia Fonseca is a citizen and resident of the State of California.

3

17.     Defendant Isidro Tebalan Garcia is a citizen and resident of the State of California.

18.     Defendant Irma Godinez is a citizen and resident of the State of California.

19.     Defendant Isabel Godoy is a citizen and resident of the State of California.

20.     Defendant Alberto Hernandez is a citizen and resident of the State of California.

21.     Defendant Marcos Hernandez is a citizen and resident of the State of California.

22.     Defendant Maria E. Las Garcia is a citizen and resident of the State of California.

23.     Defendant Claudia Mazariegos is a citizen and resident of the State of California.

24.     Defendant Maria Leonor Menjivar is a citizen and resident of the State of California.

25.     Defendant Baltazar Reyes Menjivar is a citizen and resident of the State of California.

26.     Defendant Arturo Osorio is a citizen and resident of the State of California.

27.     Defendant Maria Garcia Paredes is a citizen and resident of the State of California.

28.     Defendant Adelina Ramirez is a citizen and resident of the State of California.

29.     Defendant Marco Tulio Ramirez is a citizen and resident of the State of California.

30.     Defendant Nicholas Rodriguez is a citizen and resident of the State of California.

4

COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION

271787112v.1

31. Defendant Juana Silverio is a citizen and resident of the State of California.

32. Defendant Mollie Tuggle is a citizen and resident of the State of California.

33. Defendant Zubaidah Wagjid is a citizen and resident of the State of California.

## JURISDICTION AND VENUE

34. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure to resolve an actual controversy between the parties as set forth herein. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332, because there is complete diversity of citizenship between Plaintiff, on one hand, and the Insured Defendants, on the other, and there is more than $75,000 in controversy.

35. Venue is proper pursuant to 28 U.S.C. § 1391(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because this is a civil action in which subject matter jurisdiction is founded only on diversity of citizenship and the action is brought in a judicial district in California where Insured Defendants were doing business in at all relevant times and in which the policies were issued to Insured Defendants.

## FACTUAL BACKGROUND

### Underwriting of the Policies

36. R&E submitted an electronic application for insurance dated January 25, 2017. R&E represented that in connection with fire protection, the building was not sprinkled; the building does not contain standpipes; fire extinguishers were present in all applicable areas and that fire protection equipment is covered by a service contract for maintenance.

37. R&E was obligated to disclose any notices of violations and issues affecting the risk as they were material to the underwriting of the risk.

COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION

271787112v.1

**The Insurance Policies**

38.     Plaintiff issued an insurance policy containing Commercial General Liability ("CGL") coverage to R&E Management, Inc., designated as Policy No. QJT-SN000614-00, effective February 01, 2018 to February 01, 2019. The policy was renewed as Policy No. QJT-SN000614-01, effective February 01, 2019 to February 01, 2020, Policy No. QJT-SN000614-02, effective February 01, 2020 to February 01, 2021 (complaint "the policies"). The policies contain limits of $1 million for Each Occurrence and $1 million for Personal and Advertising Injury, subject to a $2 million General Aggregate Limit (including Products-Completed Operations). The CGL declarations for the policy identifies Location Number 62 as 3045 Leeward Avenue, Los Angeles, California, 90005. The policies insure R&E Management, Inc., as an organization with Classification 60010: Apartment Buildings.  CGL coverage is provided under Form CG 00 01 04 13.

39.     The coverage form includes the following pertinent terms:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  Insuring Agreement

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

6

271787112v.1

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation,

7

271787112v.1

change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

**COVERAGE B- PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.

b.   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

**2.  Exclusions**

This insurance does not apply to:

8

271787112v.1

* * *

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

* * *

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

* * *

e.  All court costs taxed against the insured in the "suit".  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

* * *

**SECTION II – WHO IS AN INSURED**

1.      If you are designated in the Declarations as:

* * *

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

* * *

2.  Each of the following is also an insured:

b.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

* * *

**SECTION V- DEFINITIONS**

* * *

3.  "Bodily injury" means bodily injury, sickness or

9

271787112v.1

disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

* * *

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

* * *

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

40.   The policies contain the following endorsements in pertinent part:

* * *

**The Underlying Action**

41.   On November 18, 2020, twenty-eight tenants ("the underlying plaintiffs") filed the underlying action in Los Angeles Superior Court against the Insured Defendants. On March 18, 2021, the underlying plaintiffs filed a first amended complaint.  The underlying action involves a three-story apartment building located at 3045 Leeward Avenue, Los Angeles, California, 90005 ("the

10

COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION

271787112v.1

property"). The first amended complaint (hereinafter referred to as "the complaint") states causes of action for: (1) tortious breach of the implied warranty of habitability; (2) negligence; (3) violation of Los Angeles Municipal Code sections 151.04/151.10 4; (4) nuisance; and (5) declaratory relief. (Ex. 1, ¶ 1.)

42.     The complaint alleges that in February 2020, a fire destroyed about one-third of the property.  After the fire occurred, the underlying plaintiffs allege that they could see through the remaining portions of the roof, and many walls were gone. The underlying plaintiffs allege that it was an electrical-related fire. Eight months after the fire (at the time the underlying plaintiffs filed the complaint), the underlying plaintiffs allege that nothing had been rebuilt.  The underlying plaintiffs allege that the underlying electrical dangers that caused the fire continue unabated. The complaint alleges that the burnt-out portions of the property pose an increase fire hazard and additional structural dangers. There is still no roof over a third of the property, but only a tarp. The complaint alleges that defendants' lack of repair leaving nearly 90 men, women, and children in such danger belies the most basic human decency. (Ex. 1, ¶ 1-2.)

43.     The complaint alleges the property is part of an approximately billion dollar enterprise being secretly maneuvered in the shadows of Los Angeles' real estate investment (under)world where 8-digit millionaires such as Ronald J. Mayer and his Mayer PP hide behind 7-digit millionaire management companies such as R&E Management Group, Inc. The underlying plaintiffs allege that all the while, low-income Latino tenants become financial fodder for the unscrupulous "1 per cent." (Ex. 1, ¶ 3.) The complaint alleges that the lead defendant entity is really a father-son "duo" pretending to be a legitimate corporation. Rafael "Rafi" Katz and his son Jason Katz, in part through R&E Management Group, Inc., operates a multi-generational property investment and management mini-empire comprised of countless buildings and approximately 3,000 apartments/units. This alleged mini-empire also involves separate investors,

11

271787112v.1

including the defendants, for each respective property (collectively the "Katz Dominion").

44.    The complaint alleges Katz Dominion's mini-real estate empire can no longer hide that they are slumlords who exacerbate the suffering of predominantly low-income Latino tenants (including the underlying plaintiffs). Notwithstanding the size of their holdings or wealth, the Katz Dominion allegedly scrounge with their buildings to increase investor returns rather than attempting real upkeep and repairs with licensed personnel. Leveraging long-held community bonds, the Katz Dominion is the on-the-ground lynchpin that supports an international network of real estate investors from Los Angeles to New York to Israel.  The underlying plaintiffs allege that the property is part of this network, and Mayer PP is an active investor in this network. (Ex. 1, ¶¶ 4-5.)

45.    The complaint alleges the February 2020 fire did not erase the substandard, untenantable, and inhumane conditions that Insured Defendants permitted to exist at the property prior to the fire.  The underlying plaintiffs allege the property suffers from a long existing and long list of habitability defects. Many units at the property had no heat before the fire. The Katz Dominion and other defendants allegedly administered and operated the property for almost 20 years. Defendants allegedly treat tenants (including the underlying plaintiffs) as a commodity to be abused and replaced with higher paying, non-Latino tenants. The Katz Dominion does not see people here, but rather rents. As part of the Katz Dominion, Mayer PP bankrolls the property and is not an absentee investor/landlord.  Mayer PP is kept fully aware of the situation at the properties financed within the Katz Dominion (including the property). (Ex. 1, ¶¶ 6-7.)

46.    The complaint alleges that Mayer PP is owned and operated by Ronald J. Mayer, the sole manager since 2003. Mayer PP has been actively involved in managing the property during the relevant time period. KDM ("Owner") appears as owner of record for the property. The property is allegedly

12

COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION

the sole asset of Owner. The Katz Dominion, through R&E Management Group, Inc. ("R&E Group"), helps Owner operate and manage day-to-day activities at the property. R&E Group is a long-standing California corporation. Rafael "Rafi" Katz maintains ultimate decision-making authority at R&E Group as the sole manager as well as its president, treasurer, and secretary. Rafael Katz has been observed at the property on multiple occasions. Both he and his son (Jason Katz) are "hands-on" operators of the properties in and active leaders of the Katz Dominion. R&E Group has been either managing or assisting in managing the property since at least 2018. Beginning in 2019, the Katz Dominion leadership was passed to Jason Katz, who set up a more intricate corporate web of deceit utilized to hide the slumlord activities occurring at the property. Rafi Katz remains the official figurehead and continues appearing on formal documents. (Ex. 1, ¶¶ 10, 12-14.)

47.   The complaint alleges that through Jason Katz's guidance and as confirmed in corporate filings on August 13, 2019, Mayer PP replaced Ronald J. Mayer as the sole member/manager of Owner, and Rafael Katz replaced Ronald J. Mayer as the registered agent of Owner. A mysterious "Jacob Unger, authorized agent" signed corporate documents rather than Mr. Mayer. (Ex. 1, ¶ 15.)  The underlying plaintiffs allege the Katz Dominion's "dirty work" is undertaken through a not-so-unique "business model," but one ruthlessly applied with eerie precision. Through R&E, the underlying plaintiffs allege that the Insured Defendants' general "business model" consists of the following: (1) find rent-controlled buildings with low-income Latino tenants; (2) avoid repairs and maintenance to save money; (3) when absolutely necessary, "put lipstick on a pig" to temporarily trick government inspectors; (4) undertake repairs without permits or licensed personnel thereby risking potential and actual fires (but apparently saving money); (5) harass tenants, intimidate tenants, and then threaten them with eviction; (6) renovate and remodel the vacated units; (7) raise

COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION

271787112v.1

the rents; (8) then rent to non-Latino tenants; (9) pay profits to investors like Mayer PP; and (10) repeat. (Ex. 1, ¶¶ 20-21.)

48.     The complaint alleges that the properties operated through R&E where the majority of tenants are non-Latino are substantially better maintained and safer properties than the Latino-populated hovels otherwise managed by the Katz Dominion (including the property). Moreover, through Mayer PP and KDM, the underlying plaintiffs allege that Ronald J. Mayer directly profits from the Katz Dominion's malicious operations (including such activities occurring at the property). Mr. Mayer allegedly hired R&E Group to operate the property and joined the Katz Dominion because of its business model. (Ex. 1, ¶ 22.)

49.     The complaint alleges that after the February 2020 fire, 30% of the tenants needed relocation (including several of the underlying plaintiffs).  The underlying plaintiffs allege that government authorities had deemed the burned-out carcass of the building to be unsafe and prohibited the tenants from occupying the units in this part of the property. Instead of temporarily relocating tenants to hotels/motels or to other units within the Katz Dominion's 3,000-unit real estate empire, defendants allegedly directed entire families to merely bunk with other families (in one bedroom units and studios). The complaint alleges that the Insured Defendants even had one of the underlying plaintiffs sleeping at the end of the hallway in a make-shift camp off the common-area balcony. This long-term tenant had no kitchen, no food, and not even a bathroom. (Ex. 1, ¶ 23.)

50.     The underlying plaintiffs allege that no tenant can recall a time when any apartment had a consistently working heater (if any heater at all). The underlying plaintiffs allege regularly complained to the onsite manager and agents of Owner (*e.g.,* Mr. Mayer's agents), and later to R&E about the lack of heat. At some recent point within the statute of limitations period, defendants began "installing" heater units at the property in a poorly-hatched plan to avoid liability and deceive government inspectors. The underlying plaintiffs allegedly

14

attached electric heaters to the walls in the underlying plaintiffs' apartments without ever connecting them to any electrical source. These "heaters" were allegedly mere decoration on a wall and not devices that produced heat.  The underlying plaintiffs claim that the Insured Defendants have been issued citations by government agencies such as from the City of Los Angeles Housing Community & Investment Department that explained the property had multiple habitability-related problems including dangerous electrical defects. These types of life-threatening subpar conditions and the widespread nature of these habitability deficiencies do not suddenly appear overnight, but develop over time from deferred and/or non-existent maintenance. Various items appearing in government agency citations remained unabated. (Ex. 1, ¶¶ 26-28.)

51.   Insured Defendants' overall neglect of the property and the living conditions of the tenant families allegedly has resulted in the following substantial habitability deficiencies:

- Vermin infestations such as roaches, bedbugs, and more roaches;
- Missing smoke alarms and carbon monoxide detectors;
- Heaters that do not work;
- Leaks from faucets, tub bases, showers, and even toilets;
- Damaged and deteriorated flooring, walls and ceilings;
- Insufficient water pressure and an irregular hot water supply (especially dangerous during a pandemic when hygiene and disinfecting have become paramount)
- Faulty electrical services and wiring;
- Plumbing problem;
- Poor common area sanitation and insufficient trash receptacles.

(Ex. 1, ¶ 29.)

COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION

271787112v.1

52. The underlying plaintiffs allege that any "repairs" or "pest control" that may have been undertaken have been superficial and conducted for "show" rather than as a real effort in solving defects. The complaint alleges that the Insured Defendants' efforts are intended to trick governmental agencies. Insured Defendants allegedly refuse to meet all their landlord obligations or fix the health and safety defects, hurting the tenants who continue to pay rent. The complaint alleges that Insured Defendants condoned the disgusting conditions at the property and a myriad of other violations of California's Health and Safety Code despite repeated complaints from tenants and governmental agencies. (Ex. 1, ¶¶ 35-36.)

53. The underlying plaintiffs allege that at some point in the not-too-distant past, the Insured Defendants installed new electrical components inside most of the tenants' apartments (including circuit breakers and related wiring), and undertook electrical repair work throughout the entirety of the property. The biggest impact of this building-wide electrical work was a fire that burned down an entire third of the property. The underlying plaintiffs do not allege that defendants intentionally set fire to the property, but claim the February 2020 fire was not beyond the landlords' control. The underlying plaintiffs allege that the Insured Defendants' negligent electrical work was either the direct cause of the February 2020 fire or a substantial contributing factor to the conditions that triggered the fire. Notwithstanding the substantial level of electrical repair and replacement efforts, the Insured Defendants allegedly proceeded without the correct or adequate permits or any permits at all. (Ex. 1, ¶ 39.)

54. The underlying plaintiffs seek compensatory damages over $150,000; general damages over $1,450,000; special damages over $150,000; punitive damages over $2,900,000; attorneys' fees; court-related orders curing habitability defects including that defendants repair the property; disgorgement of over $240,000; special damages of over $720,000; a declaration and

16

271787112v.1

determination regarding the correct rent; declaration that repairs be made immediately regarding the property and/or whether tenants relocate while the property is being repaired; pre-judgment and post-judgment interest.

55. The Insured Defendants tendered the defense of the underlying action to plaintiff. Plaintiff has since afforded the Insured Defendants with a defense under a reservation of rights.

**CAUSES OF ACTION**

**First Cause of Action**

**Declaratory Relief against All Defendants**

**(No Duty to Indemnify Insured Defendants in the Underlying Action)**

56. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

57. The underlying plaintiffs' claimed damages in the underlying action arise from a fire due to faulty electrical wiring.

58. In procuring the policies, R&E represented that the property complied with fire and safety code requirements.

59. Plaintiff is informed and believes and thereon alleges that R&E made material misrepresentations regarding compliance with fire and safety code requirements; such misrepresentations entitle Plaintiff to decline coverage.

60. Furthermore, Plaintiff is informed and believes and thereon alleges that the fire complained of by the underlying plaintiffs was caused by non code compliant electrical systems. The Insured Defendants' purported failure to comply with code requirements are not covered under the policies.

61. In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the policies, Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action due to their misrepresentations in procuring the policies.

62. Plaintiff is informed and believes and thereon alleges that Insured

17

COMPLAINT FOR DECLARATORY RELIEF, REIMBURSEMENT AND RESCISSION

271787112v.1

Defendants contend that there is coverage under the policies for the underlying action, and that Plaintiff has a duty to indemnify Insured Defendants in connection with the underlying action under the policies.

63.     An actual dispute and controversy exists between Plaintiff and the Insured Defendants as to coverage under the policies for the underlying action and Plaintiff's lack of a duty to indemnify Insured Defendants under the policies and applicable law, and a judicial determination is necessary to resolve this dispute.

64.     Plaintiff seeks a declaration from this Court that there is no coverage for the underlying action and that Plaintiff has no obligation to indemnify Insured Defendants in the underlying action.

## Second Cause of Action

## Declaratory Relief against All Defendants

**(No Duty to Indemnify: Claim for Violation of Los Angeles Municipal Code sections 151.04/151.10 4)**

65.     Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

66.     The underlying plaintiffs allege violations of LAMC 151.01, which provides the following remedies:  "Any person who demands, accepts or retains any payment of rent in excess of the maximum rent or maximum adjusted rent in violation of the provisions of this chapter, or any regulations or orders promulgated hereunder, shall be liable in a civil action to the person from whom such payment is demanded, accepted or retained for damages of three times the amount by which the payment or payments demanded, accepted or retained exceed the maximum rent or maximum adjusted rent which could be lawfully demanded, accepted or retained together with reasonable attorneys' fees and costs as determined by the court."

67.     The underlying plaintiffs seek damages including an amount

18

equivalent to the difference between the underlying plaintiffs' rent for the property and the rent underlying plaintiffs must pay in the future for a different property, currently estimated at $500,000.

68.    California law provides that civil penalties are not considered insurable damages.  Thus, Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action for the underlying plaintiffs' claim for violation of Los Angeles Municipal Code sections 151.04/151.10 4.

69.    Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the policies, and that Plaintiff has a duty to indemnify Insured Defendants in connection with the claim for violation of Los Angeles Municipal Code sections 151.04/151.10 4.

70.    An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage for violation of Los Angeles Municipal Code sections 151.04/151.10 4 under the policies for the underlying action and Plaintiff's lack of a duty to indemnify Insured Defendants under the policies and applicable law, and a judicial determination is necessary to resolve this dispute.

71.    Plaintiff seeks a declaration from this Court that there is no coverage for the claim for violation of Los Angeles Municipal Code sections 151.04/151.104 alleged in the underlying action and that Plaintiff has no obligation to indemnify Insured Defendants regarding such violations.

**Third Cause of Action**

**Declaratory Relief against All Defendants**

**(No Duty to Indemnify for Tenant Defendants' Attorney's Fees and Costs)**

72.    Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

73.    The underlying plaintiffs pray for attorneys' fees and costs in the underlying action.

74.    The policies' Supplementary Payment Provision excludes coverage

19

271787112v.1

for the underlying plaintiffs' Attorneys' Fees and Costs.

75.   Plaintiff also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the policies not specifically identified herein that potentially limit or preclude coverage for attorneys' fees and costs.

76.   In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the policies, Plaintiff contends it has no duty to indemnify Insured Defendants for the underlying plaintiffs' attorneys' fees and costs in the underlying action.

77.   Plaintiff is informed and believes and thereon alleges that defendants contend that there is actual coverage under the policies for the underlying action, and that Plaintiff has a duty to indemnify Insured Defendants in connection with the prayer for attorneys' fees and costs asserted in the underlying action under the policies.

78.   An actual dispute and controversy exists between Plaintiff and defendants as to coverage under the policies for the underlying action and Plaintiff's lack of a duty to indemnify Insured Defendants with respect to the prayer for attorneys' fees and costs alleged in the underlying action under the policies and applicable law, and a judicial determination is necessary to resolve this dispute.

79.   Plaintiff seeks a declaration from this Court that there is no coverage for the underlying plaintiffs' attorneys' fees and costs in the underlying action and that Plaintiff has no obligation to indemnify the Insured Defendants with respect to any such attorneys' fees and costs.

### Fourth Cause of Action

### Declaratory Relief against All Defendants

### (No Duty to Indemnify for Treble Damages or Punitive Damages)

80.   Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

20

271787112v.1

81.    The underlying plaintiffs pray for treble damages and punitive damages in the underlying action.

82.    There is no coverage for treble damages and punitive damages under the policies and/or California law.

83.    Plaintiff also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the policies not specifically identified herein that potentially limit or preclude coverage for treble and/or punitive damages.

84.    In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the policies, Plaintiff contends it has no duty to indemnify Insured Defendants for treble damages or punitive damages in the underlying action.

85.    Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is actual coverage under the policies for the underlying action, and that Plaintiff has a duty to indemnify Insured Defendants in connection with treble and punitive damages in the underlying action under the policies.

86.    An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the policies for the underlying action and Plaintiff's lack of a duty to indemnify Insured Defendants with respect to treble and/or punitive damages in the underlying action under the policies and applicable law, and a judicial determination is necessary to resolve this dispute.

**Fifth Cause of Action**

**Declaratory Relief against All Defendants**

**(No Duty to Defend in the Underlying Action)**

87.    Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

88.    The underlying plaintiffs' claimed damages in the underlying action arise from a fire due to faulty electrical wiring.

21

89. In procuring the policies, R&E represented that the property complied with fire and safety code requirements.

90. Plaintiff is informed and believes and thereon alleges that R&E made material misrepresentations regarding compliance with fire and safety code requirements; such misrepresentations entitle Plaintiff to decline coverage.

91. Furthermore, Plaintiff is informed and believes and thereon alleges that the fire complained of by the underlying plaintiffs was caused by non code compliant electrical systems.  The Insured Defendants' purported failure to comply with code requires are not covered under the policies.

92. In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the policies, Plaintiff contends it has no duty to defend Insured Defendants in the underlying action due to their misrepresentations in procuring the policies.

93. Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is potential for coverage under the policies for the underlying action, and that Plaintiff has a duty to defend Insured Defendants in connection with the underlying action under the policies.

94. An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the policies for the underlying action and Plaintiff's lack of a duty to defend Insured Defendants under the policies and applicable law, and a judicial determination is necessary to resolve this dispute.

95. Plaintiff seeks a declaration from this Court that there is no potential for coverage for the underlying action and that Plaintiff has no obligation to defend Insured Defendants sure in the underlying action.

**Sixth Cause of Action**

**For Reimbursement of Defense Fees and Costs**

96. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

22

97.    Plaintiff agreed to defend Insured Defendants in the underlying action under a reservation of rights, including the right to seek reimbursement of attorneys' fees and costs expended to defend Insured Defendants for claims not covered under the policies.

98.    There is no coverage for the underlying action under the policies.

99.    Accordingly, Plaintiff is entitled to reimbursement for the full amount it expended to defend the Insured Defendants in the underlying action with interest.

### Seventh Cause of Action

### For Rescission

100.    Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

101.    The underlying plaintiffs' claimed damages in the underlying action arise from a fire due to faulty electrical wiring.

102.    In procuring the policies, R&E represented that the property complied with fire and safety code requirements.

103.    Plaintiff is informed and believes and thereon alleges that R&E made material misrepresentations regarding compliance with fire and safety code requirements; such misrepresentations entitle Plaintiff to decline coverage.

104.    R&E was obligated to disclose these violations and issues affecting the risk as they were material to the underwriting of the risk.  Plaintiff would not have issued the policies or it would have charged higher premiums had R&E disclosed these material issues.

105.    Accordingly, Plaintiff is entitled to rescind the policies rendering it void *ab initio*.

### PRAYER FOR RELIEF

Plaintiff prays for judgment against Insured Defendants as follows:

1.    For a judicial declaration that there is no coverage under the policies

23

due to R&E's misrepresentations in procuring the policies, and thus, Plaintiff has no duty to indemnify Insured Defendants in the underlying action;

2.     For a judicial declaration that there is no coverage under the policies, and thus, Plaintiff has no duty to indemnify Insured Defendants with respect to the cause of action for Violation of Los Angeles Municipal Code sections 151.04/151.10 4;

3.     For a judicial declaration that there is no coverage under the policies for the underlying plaintiffs' attorneys' fees and costs in the underlying action;

4.     For a judicial declaration that there is no coverage under the policies, and thus, Plaintiff has no duty to indemnify Insured Defendants for treble and punitive damages;

5.     For a judicial declaration that there is no potential for coverage under the policies due to R&E's misrepresentations in procuring the policies, and thus, Plaintiff has no duty to defend Insured Defendants in the underlying action;

6.     For reimbursement of attorney's fees and costs Plaintiff incurred to defend Insured Defendants in the underlying action according to proof;

7.     For rescission of the policies.

8.     For such other and further relief as the Court deems just and proper.

Dated:  November 29, 2022                    WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:/s/ Sue Kim
    Michelle R. Press
    Sue Kim
    Attorneys for Plaintiff STATE NATIONAL INSURANCE CO., INC.

24

271787112v.1